UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

RICHARD D'ANGELO,

                Plaintiff,               **COMPLAINT AND**
                                                                **JURY DEMAND**

       -against-

RXR REALTY,

                Defendant.

------------------------------------------------------------------- X

      Plaintiff, by his undersigned attorneys, as and for his Complaint against Defendant, alleges as follows:

## INTRODUCTION

      1.     This is a complaint for disability discrimination in employment brought by an employee of RXR Realty (RXR), a recipient of Federal Funds, brought pursuant to the Rehabilitation Act of 1973, 29 USC Section 701 et seq. (Section 504 of the Rehabilitation Act of 1973), and the NY State Human Rights Law. Plaintiff alleges that he was terminated from his job only because his employer would not accommodate his disability, a disability which could have been accommodated without undue hardship to the employer.

## JURISDICTION

      2.     This Court has jurisdiction pursuant to 19 USC Section 794(a), 28 USC Section 1331, and pursuant to this court's supplemental and pendent jurisdiction over State law claims.

## PARTIES

3. Richard D'Angelo is an individual with a disability, as defined at 29 USC Sec. 705, and a person with a disability as defined by the NY State Human Rights Law, who at all relevant times was employed by Defendant RXR.

4. Defendant RXR is a real estate investor, manager, and developer which manages 84 commercial real estate properties and investments with an aggregate gross asset value of $22.4 billion, comprising approximately 30.3 million square feet of commercial properties, a multi-family residential portfolio of approximately 6,900 units under operation or development, and control of development rights for an additional approximately 2,900 multi-family and for-sale units. It is the recipient of Federal Funds and is a "Participating Activity" as that terms is defined at 29 USC Section 794. Its principal office is located at 75 Rockefeller Plaza, New York, NY, within the venue of this Court.

## FACTS RELEVANT TO ALL CLAIMS

5. In or about 2005, Plaintiff worked as the Senior Property Manager for RXR, at a property known as RXR Plaza in Uniondale, New York

6. Plaintiff's responsibilities in that job included

   a) Overseeing engineering staff who operated the building mechanical systems;

   b) Managing all outsourced services;

   c) Developing a budget for the properties;

   d) Conducting meetings with tenants and service providers, vendors, service providers, and upper management; and

   e) Daily inspections of the property.

7. On March 16, 2020, due to COVID Pandemic, Plaintiff, like most "non-essential" employees, started working from home due to the COVID Pandemic.

8. RXR HR sent a memo to all remote-working employees as part of an effort to bring employees back to their facility, asking whether employees had health conditions that made them "high risk" for contracting COVID.

9. Plaintiff responded to RXR that he was high risk to COVID due to my ulcerative colitis, a disability as that term is defined at 29 USC Section 704.

10. On May 14, 2020 Plaintiff, when given the option, opted to work remotely.

11. On or about July 30, 2020, Plaintiff submitted a letter from his physician recommending that he continue to work from home due to the chronic immunosuppressant medication he took, which made him high risk for complications from COVID.

12. On August 3, 2020 RXR Human Resources (HR) requested a meeting to discuss plaintiff's continued remote work.

13. HR Director Tanya Sacco had that discussion with Plaintiff and asked to speak with his physician discuss what would happen to Plaintiff if he got COVID -Plaintiff asked HR to put in writing what exactly they were asking for because it seemed like an absurd question, but they never put it in writing, Plaintiff began to feel that he was being pressured to stop his remote work.

14. The stress of all of this pressure from RXR to return to work and the absurd questions about what would happen to Plaintiff if he got COVID caused anxiety, and worsened Plaintiff's ulcerative colitis.

15. On or about September 8, 2020 Plaintiff contacted HR requesting to understand the short and long-term disability benefits available to him.

16. On September 8, 2020 HR advised Plaintiff responds that his medical coverage would remain active while he was on disability leave, information which later proved to be false.

17. On September 10, 2020 Tanya Sacco asked again when they would get to speak with Plaintiff's doctor.

18. On September 10, 2020 Plaintiff's doctor wrote to Defendant, advising it that Plaintiff had an ulcerative colitis flare, and that he could only return to work with immediate and unfettered access to a bathroom. The doctor recommended that Plaintiff should work from home to avoid any embarrassment of incontinence in the workplace.

19. On September 11, 2020 Sacco contacted Plaintiff in order to arrange a discussion about his "options." A meeting was set for September 14, 2020.

20. At around 10am on September 14, 2020 Plaintiff received a call from RXR Vice President Kevin Murphy in order to advise him that he was being issued a disciplinary warning for renting a space at RXR Plaza, a warning which was issued in writing. The fact was Plaintiff had decided, for safety reasons, not to allow a film crew to shoot a film in the lobby of a building.

21. Later in the afternoon, Sacco, after reviewing Plaintiff's doctor's note, directed Plaintiff to take 5 days of sick leave, use up his vacation leave and go on FMLA leave or come back to work. She advised Plaintiff that RXR was not willing to accommodate him for my disability as suggested by his physician.

22. On September 15, 2020, Sacco emailed Plaintiff that if he took short term disability leave under the employer sponsored plan that his medical benefits would continue while he was on short term disability leave.

23. On September 17, 2020 an HR administrator sent Plaintiff his papers to take short term disability leave, which was to run concurrent with FMLA Leave. The disability leave was to

run for 26 weeks, with Plaintiff being paid, by an insurance company, a portion of his payPlaintiff completed the required paperwork and submitted his claim. While he waited he utilized his accumulated sick leave in order to be paid

24. On October 16, 2020 Plaintiff received a memo from Cynthia Yodice, the HR Benefits Administrator, telling him that his pay from RXR had ceased and that his claim for short term disability benefits had been submitted to the carrier.

25. On December 18, 2020 Plaintiff's physician submitted a letter describing the state and treatment for Plaintiff's disability, which included permanent scarring of his left colon and bouts of incontinence, requiring unfettered access to a bathroom.

26. On January 7, 2021 Tanya Sacco advised Plaintiff that his FMLA leave was exhausted, and that due to his inability to return to work, his employment with RXR would be terminated on January 11, 2021, and his medical insurance coverage, unless paid for by Plaintiff under COBRA, would end on January 31, 2021.

27. On January 25, 2021 Allie Barot, responding to a complaint by Plaintiff about the abruptness of his termination, stated that is Plaintiff would be "in a position to return to work in the future," RXR would discuss rehiring to an available position.

28. On September 22, 2021 Plaintiff's counsel wrote to Tanya Sacco proposing that Plaintiff resume his position, which had not been filled, with either of two accommodations; a) that Plaintiff be allowed to resume work at home, with periodic trips to the office when in-person observation was needed, or b) that Plaintiff be given an office near a bathroom.

29. No response was received from RXR to this proposal.

30. I had salary medical benefits paid car lease bonus gas card 401 k contribution now it was all taken away since they were not willing to accommodate my disability My job was given to my assistant manager for probably less than half of what they paid me .

### INJURY

31. As a result of Plaintiff's discharge, and the failure to rehire him with an accommodation, as requested, Plaintiff has suffered the loss of wages, health benefits, and retirement benefits.

32. Additionally, the loss of employment has caused Plaintiff significant emotional distress, with significant physical consequences, to his injury in a sum exceeding $1,000,000.

### AS AND FOR A FIRST CAUSE OF ACTION

33. By acting as described above, Defendant RXR has acted in violation of 29 USC Section 794(a)

### AS AND FOR A SECOND CAUSE OF ACTION

34. By acting as described above, Defendant RXR has acted in violation of the New York State Human Rights Law, Section 296 of the Executive Law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment,

a) Reinstating Plaintiff to his job, and ordering Defendant to accord him a reasonable accommodation in doing so;

b) Awarding Plaintiff lost wages, and a sum equivalent to the benefits which he has been denied;

c) Awarding Plaintiff compensatory emotional distress damages in a sum no less than $1,000,000, on his NY State Human Rights Law claim;

d) Awarding Plaintiff costs and attorney's fees.

## JURY DEMAND

Plaintiff demands a jury trial on all of his claims in this matter.

Dated: New York, New York
June 17, 2022

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiff*

By: *Arthur Z. Schwartz*
Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
aschwartz@afjlaw.com